William M. Hogg (SBN 338196)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com

*Counsel for McNabb & the Straight Time Employees*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| **KATINA MCNABB**, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:** |
| v. | (1)  Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*); |
| **HENRY MAYO NEWHALL MEMORIAL HOSPITAL,** | (2)  Failure to Pay Overtime (Cal. Lab. Code § 510); |
| Defendant. | (3)  Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512); |
| | (4)  Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226); |
| | (5)  Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and |
| | (6)  Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). |
| | **DEMAND FOR JURY TRIAL** |

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*McNabb v. Henry Mayo Newhall Memorial Hospital*

## Summary

1.     Katina McNabb ("McNabb") brings this class and collective action to recover unpaid wages and other damages from Henry Mayo Newhall Memorial Hospital ("Henry Mayo").

2.     Henry Mayo employed McNabb as one of its Straight Time Employees (defined below).

3.     Henry Mayo pays McNabb and the other Straight Time Employees by the hour.

4.     The Straight Time Employees regularly work more than 8 hours a day and 40 hours a week.

5.     But Henry Mayo does not pay McNabb and the other Straight Time Employees overtime at 1.5 times their regular rate of pay when they work more than 8 hours a day or 40 hours a week.

6.     Instead, Henry Mayo misclassifies McNabb and the other Straight Time Employees as independent contractors and pays McNabb and the other Straight Time Employees the same hourly rate for all hours worked up to 12 in a day (Henry Mayo's "straight time for overtime" pay scheme).

7.     Henry Mayo's straight time for overtime pay scheme violates the Fair Labor Standards Act ("FLSA") and various provisions of the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders by depriving the Straight Time Employees of "time and a half" overtime pay they are owed for all hours worked after 8 in a day and 40 in a week. (*See* CAL. LAB. CODE § 510; IWC Wage Order No. 5-2001(3)(A)(1).)

8.     Additionally, Henry Mayo fails to authorize, permit, and/or make available compliant meal periods to the Straight Time Employees (Henry Mayo's "meal period policy").

9.     And when McNabb and the other Straight Time Employees work 10 hours in a workday Henry Mayo fails to authorize, permit, and/or make available a

1    second compliant meal period.

2        10.    Instead, Henry Mayo requires McNabb and the other Straight Time

3    Employees to remain on duty and perform work throughout their shifts.

4        11.    Henry Mayo also fails to authorize, permit, and/or make available

5    compliant rest periods to these employees for every four hours worked or major

6    fraction thereof (Henry Mayo's "rest period policy").

7        12.    Despite depriving Henry Mayo and the other Straight Time Employees

8    of compliant meal and rest periods, Henry Mayo does not pay these employees the

9    required premium pay for the first missed meal and rest period each workday.

10       13.    Further, as a result of its unlawful employment practices, Henry Mayo

11   also violates the accurate wage statement provisions of the California Labor Code

12   and applicable Wage Order(s) by depriving McNabb and the other Straight Time

13   Employees of wage statements that accurately reflect all their hours worked and all

14   wages actually earned.

15       14.    And, as a result of Henry Mayo's unlawful employment practices,

16   McNabb and other former Straight Time Employees are not timely paid all wages

17   due and owing upon termination of employment.

18       15.    Finally, Henry Mayo's unlawful employment practices violate the

19   California Unfair Competition Law ("UCL") by practicing, employing, and utilizing

20   the employment practices outlined above by knowingly denying McNabb and the

21   other Straight Time Employees: (1) overtime wages, (2) compliant meal and rest

22   periods, and (3) accurate itemized wage statements.

23                        **Jurisdiction & Venue**

24       16.    This Court has original subject matter jurisdiction pursuant to 28

25   U.S.C. § 1331 because this case involves a federal question under the FLSA. 29

26   U.S.C. § 216(b).

27

28

17.    This Court has supplemental jurisdiction over the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over Henry Mayo because it is a domestic nonprofit corporation.

19.    Venue is proper because Henry Mayo maintains its principal place of business in Los Angeles County, which is in this district and division. 28 U.S.C. § 1391(b)(1).

## Parties

20.    Henry Mayo employed McNabb as a Registered Nurse (RN) in its Valencia Hospital from approximately December 2021 until January 2024.

21.    Henry Mayo misclassified McNabb as an independent contractor to avoid paying her overtime wages.

22.    Instead, Henry Mayo paid her according to its straight time for overtime pay scheme.

23.    McNabb's written consent is attached as **Exhibit 1**.

24.    Henry Mayo likewise subjects the other Straight Time Employees to these policies.

25.    The putative collective of similarly situated employees is defined as:

> **All current and former hourly Henry Mayo employees who were paid the same hourly rate for hours worked in excess of 40 in a workweek as hours worked under 40 in a workweek, at any time starting 3 years before the filing of this Complaint through final resolution of this Action (the "FLSA Collective Members").**

26.    The putative California class of similarly situated employees is defined as:

> **All current and former hourly Henry Mayo employees in California who were paid the same hourly rate for hours worked in excess of 8 in a workday as hours worked under 8 in a workday (or in excess of 40 in a workweek as hours worked under**

**40 in a workweek), at any time starting 4 years before the filing of this Complaint through final resolution of this Action (the "California Class Members").**

27.    The FLSA Collective Members and the California Class Members are collectively referred to as the "Straight Time Employees."

28.    Henry Mayo is a California nonprofit corporation headquartered in Valencia, California.

29.    Henry Mayo may be served with process by serving its registered agent: **Kevin A Klockenga, 23845 McBean Pkwy Valencia, California, 91355**, or wherever he may be found.

## FLSA Coverage

30.    At all relevant times, Henry Mayo was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31.    At all relevant times, Henry Mayo was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32.    At all relevant times, Henry Mayo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, and personal protective equipment, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33.    At all relevant times, Henry Mayo has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34.    At all relevant times, the Straight Time Employees were Henry Mayo's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35.    At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

/ / /

/ / /

## FACTS

36.    Henry Mayo operates a 357-bed hospital, employs more than 1,800 employees, and provides "critical life-saving services and specialized care" including an "emergency department [that] is open 24/7."[1]

37.    To meet its business objectives, Henry Mayo employs workers such as McNabb and the other Straight Time Employees to provide healthcare services to its patients.

38.    Henry Mayo uniformly misclassifies these Straight Time Employees as "independent contractors" and fails to pay them overtime at the required premium rates.

39.    McNabb and the Straight Time Employees are hired as workers with direct patient care responsibilities, such as nurses, CNAs, and the like.

40.    McNabb and the Straight Time Employees work alongside Henry Mayo's other direct-employee patient care employees performing the same or substantially similar jobs.

41.    McNabb and the Straight Time Employees are subject to the same hospital rules, policies, and practices as Henry Mayor's other direct-employee patient care employees.

42.    Henry Mayo hires and treats McNabb and the other Straight Time Employees just like other regular employees.

43.    Despite misclassifying McNabb and the other Straight Time Employees as independent contractors, Henry Mayo controls all meaningful aspects of their employment.

44.    Henry Mayo controls McNabb's and the other Straight Time Employees' rate and method of pay.

---

[1]    https://www.henrymayo.com/about-us/ (last visited February 21, 2025).

45.    Henry Mayo controls McNabb's and the other Straight Time Employees' schedules and assignments.

46.    Henry Mayo controls McNabb's and the other Straight Time Employees' work.

47.    McNabb's and the other Straight Time Employees' work is supervised and assigned by Henry Mayo personnel.

48.    Henry Mayo requires McNabb and its other Straight Time Employees to follow Henry Mayo's policies, procedures, plans, protocols, and specifications.

49.    McNabb's and the other Straight Time Employees' work must strictly adhere to the quality standards put in place by Henry Mayo.

50.    McNabb and the other Straight Time Employees are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

51.    Indeed, the daily and weekly activities of McNabb and the other Straight Time Employees are routine and largely governed by standardized plans, procedures, and checklists created by Henry Mayo.

52.    Virtually every job function is predetermined by Henry Mayo, including the tools and equipment used, the schedule of work, and related work duties.

53.    Without the job McNabb and the other Straight Time Employees perform, Henry Mayo would not be able to complete its core business objective of providing healthcare to its patients.

54.    The work McNabb and the other Straight Time Employees perform is therefore an essential and integral part of Henry Mayo's core business as a hospital system: providing healthcare to patients.

55.    McNabb and the other Straight Time Employees rely on Henry Mayo for work and compensation.

56.    McNabb and the other Straight Time Employees are not engaged in an

independently established trade, occupation, or business of the same nature as the work they perform for Henry Mayo.

57.    McNabb and the other Straight Time Employees cannot subcontract out the work they are assigned by Henry Mayo.

58.    McNabb and the other Straight Time Employees do not substantially invest in the tools required to complete the overall job to which they are assigned by Henry Mayo.

59.    Rather, Henry Mayo incurs the large-scale business and operating expenses like marketing, equipment, tools, and materials.

60.    McNabb and the other Straight Time Employees do not market their services while employed by Henry Mayo.

61.    Henry Mayo maintains control, oversight, and direction of McNabb and the other Straight Time Employees, including, but not limited to, hiring, firing, disciplining, and other employment practices.

62.    In sum, McNabb and the other Straight Time Employees are Henry Mayo's employees under federal and California law. *See* Cal. Lab. Code § 2775.

63.    For example, McNabb worked for Henry Mayo as an RN from approximately December 2021 through January 2024 in Henry Mayo's Valencia facility.

64.    McNabb's primary duties included working in the behavioral health unit assisting with distributing medication to patients, restraining patients when needed, evaluating, documenting, admitting and discharging patients to and from the hospital, and addressing other patient care needs as appropriate and as assigned by Henry Mayo.

65.    McNabb was Henry Mayo's hourly employee.

66.    Henry Mayo approved McNabb's hours worked each workday and workweek.

67.    Henry Mayo's records reflect the hours McNabb worked each day and week.

68.    McNabb regularly worked more than 8 hours a workday and/or 40 hours a workweek, while employed by Henry Mayo.

69.    Indeed, McNabb typically worked 12 hours a workday for 3 to 4 days a workweek.

70.    For example, upon information and belief, McNabb worked approximately four 12-hour shifts totaling at least 48 on-the-clock hours worked during the second week of January in 2023

71.    However, McNabb was not paid 1.5 times her regular hourly rate of pay for any of her hours worked over 8 in a day or over 40 during the second week of January 2023.

72.    Despite Henry Mayo knowing McNabb regularly worked overtime, she was not paid time and a half overtime wages for the hours she worked over 8 in a workday and 40 in a workweek.

73.    Instead, she was paid under Henry Mayo's straight time for overtime pay scheme.

74.    McNabb was paid approximately $71 an hour working for Henry Mayo.

75.    But Henry Mayo misclassified her as an independent contractor to avoid paying her overtime wages.

76.    The shifts she worked for Henry Mayo were scheduled through an online "app" Henry Mayo utilized to secure employees, called CareRev.

77.    Each shift McNabb worked she was paid a single hourly rate (straight time) for each hour she worked for Henry Mayo up to 12 hours a workday.

78.    McNabb was thus not paid "time and a half" overtime wages when she worked in excess of 8 hours in a day and/or 40 hours in a workweek for Henry Mayo.

79.    And while exact job duties and precise locations worked may differ, McNabb and the other Straight Time Employees are all subject to Henry Mayo's

same or similar illegal policy—Henry Mayo's straight time for overtime pay scheme and meal period and rest period policies—for similar work.

80.    Like McNabb, Henry Mayo's other Straight Time Employees are paid on an hourly basis.

81.    Like McNabb, Henry Mayo requires the other Straight Time Employees to report their hours worked.

82.    And Henry Mayo approves the other Straight Time Employees' hours.

83.    Thus, just as Henry Mayo maintains records of the hours McNabb worked, it also maintains records of the hours the other Straight Time Employees work each day and week.

84.    Henry Mayo's records show the other Straight Time Employees, like McNabb, regularly work more than 8 hours a workday and 40 hours a workweek.

85.    Every Straight Time Employee worked more than 8 hours in at least one workday or 40 hours in at least one workweek during the relevant period.

86.    Despite knowing the other Straight Time Employees regularly worked overtime hours, they are not paid premium overtime wages, while working for Henry Mayo.

87.    Additionally, Henry Mayo fails to authorize, permit, and/or make available compliant meal periods to McNabb and the other Straight Time Employees.

88.    Indeed, Henry Mayo simply assumes McNabb and the other Straight Time Employees receive compliant, timely, and *bona fide* meal periods each shift they work (and two meal periods for shifts exceeding 10 hours).

89.    But McNabb and the other Straight Time Employees do not actually receive compliant, timely, and *bona fide* meal periods.

90.    Instead, Henry Mayo requires McNabb and the other Straight Time Employees to remain on duty and perform compensable work, including during attempted meal periods.

91.    During attempted meal periods, McNabb and the other Straight Time Employees are not free to engage in personal activities.

92.    McNabb and the other Straight Time Employees are necessarily forced to substantially perform their regular duties and responsibilities because, for example, they must continue caring for patients requiring immediate and continuous medical attention.

93.    Thus, McNabb and the other Straight Time Employees routinely spend their meal periods performing work under Henry Mayo's direction and control.

94.    And Henry Mayo fails to authorize, permit, and/or make available compliant rest periods to McNabb and the other Straight Time Employees.

95.    Indeed, Henry Mayo simply assumes McNabb and the other Straight Time Employees receive compliant, timely, and *bona fide* rest periods for every 4 hours they work or major fraction thereof.

96.    But McNabb and the other Straight Time Employees do not actually receive compliant, timely, and *bona fide* rest periods.

97.    Instead, Henry Mayo requires McNabb and the other Straight Time Employees to remain on duty and perform compensable work throughout their shifts and they are not fully relieved of their duties, including during attempted rest periods.

98.    During attempted rest periods, McNabb and the other Straight Time Employees are not free to engage in personal activities.

99.    Rather, McNabb and the other Straight Time Employees are necessarily forced to substantially perform their regular duties and responsibilities.

100.    Thus, McNabb and the other Straight Time Employees routinely spend their rest periods performing work under Henry Mayo's direction and control.

101.    Despite knowing it fails to provide these employees with compliant meal and rest periods, Henry Mayo also uniformly fails to pay McNabb and the other Straight Time Employees the mandatory one hour of premium pay—at their regular

rates of pay—for the first compliant meal and rest period they miss or are denied each workday.

102. Further, Henry Mayo's wage-and-hour violations include routinely failing to maintain true and accurate records for McNabb and the other Straight Time Employees.

103. Specifically, Henry Mayo fails to pay McNabb and the other Straight Time Employees all earned wages by failing to provide an hour of premium pay for noncompliant meal and/or rest periods and fails to pay them overtime for hours worked in excess of 8 a day and 40 a workweek.

104. Thus, Henry Mayo uniformly fails to provide McNabb and the other Straight Time Employees with accurate, itemized wage statements that correctly state their wages actually earned, as well as meal and rest period premium pay they are owed, in violation of California law.

105. Finally, due to Henry Mayo's straight time for overtime pay scheme and meal and rest period policies, Henry Mayo fails to provide the McNabb and the other Straight Time Employees who have left their employment with Henry Mayo with full payment of all wages owed at the end of their employment, in violation of California law.

106. As these Straight Time Employees are owed unpaid wages and premium wages when their employment ends, and these amounts remain unpaid under Henry Mayo's uniform policies and practices, Henry Mayo uniformly fails to pay all wages due upon termination, in violation of California law.

107. As a result, Henry Mayo is subject to waiting time penalties.

108. Henry Mayo's violations of California law were willful, carried out in bad faith, and caused significant damage to McNabb and the other Straight Time Employees.

/ / /

/ / /

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*McNabb v. Henry Mayo Newhall Memorial Hospital*

## Class And Collective Action Allegations

109.   McNabb brings her California state law claims as a class action pursuant to Fed. R. Civ. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

110.   Like McNabb, the other Straight Time Employees are victimized by Henry Mayo's straight time for overtime pay scheme and meal period and rest period policies.

111.   Other Straight Time Employees worked with McNabb and indicated they were paid in the same manner, performed similar work, and were subject to Henry Mayo's same straight time for overtime pay scheme and meal period and rest period policies.

112.   Based on her experience with Henry Mayo, McNabb is aware Henry Mayo's straight time for overtime pay scheme and meal period and rest period policies were imposed on other Straight Time Employees.

113.   The Straight Time Employees are known to Henry Mayo and can be readily identified through Henry Mayo's business and personnel records.

114.   The Straight Time Employees are similarly situated in the most relevant respects.

115.   Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages for hours worked over 8 in a workday and 40 in a workweek, compliant meal and rest periods, premium pay for missed meal and rest periods, accurate wages statements, and timely payment of wages upon termination of employment.

116.   Rather, the Straight Time Employees are held together by Henry Mayo's straight time for overtime pay scheme and meal period and rest period policies, which systematically deprive McNabb and the other Straight Time Employees of their earned overtime wages, premium wages, accurate wage

1  statements, and timely wages upon termination of employment.

2  117.    Henry Mayo's records reflect the number of hours the Straight Time
3  Employees recorded each workday and workweek.

4  118.    And Henry Mayo's records show it failed to pay the Straight Time
5  Employees overtime wages for hours worked in excess of 8 a day and 40 a week, as
6  well as premium pay for numerous days it denied them compliant meal and/or rest
7  periods.

8  119.    The back wages owed to McNabb and the other Straight Time
9  Employees can therefore be calculated using the same formula applied to the same
10  records.

11  120.    Even if the issue of damages were somewhat individual in character, the
12  damages can be calculated by reference to Henry Mayo's records, and there is no
13  detraction from the common nucleus of liability facts.

14  121.    Therefore, the issue of damages does not preclude class or collective
15  treatment.

16  122.    McNabb's experiences are therefore typical of the experiences of the
17  other Straight Time Employees.

18  123.    McNabb has no interest contrary to, or in conflict with, the interests of
19  other Straight Time Employees that would prevent class or collective treatment.

20  124.    Like each Straight Time Employee, McNabb has an interest in obtaining
21  the unpaid wages owed to them under California law.

22  125.    McNabb and her counsel will fairly and adequately represent the
23  Straight Time Employees and their interests.

24  126.    Indeed, McNabb retained counsel with significant experience in
25  handling complex class and collective action litigation.

26  127.    A class and collective action, such as this one, is superior to other
27  available means for fair and efficient adjudication of this matter.

28  128.    Absent this class and collective action, many Straight Time Employees

will not obtain redress for their injuries, and Henry Mayo will reap the unjust benefits of violating California law.

129.   Further, even if some of the Straight Time Employees could afford individual litigation against Henry Mayo, it would be unduly burdensome to the judicial system.

130.   Indeed, the multiplicity of actions would create a hardship for the Straight Time Employees, the Court, and Henry Mayo.

131.   Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

132.   The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

133.   The common questions of law and fact include:

    a.   Whether Henry Mayo failed to pay the Straight Time Employees overtime wages for all overtime hours worked;

    b.   Whether Henry Mayo failed to pay its Straight Time Employees one hour of premium pay for each day it deprived them of compliant meal period(s);

    c.   Whether Henry Mayo failed to pay its Straight Time Employees one hour of premium pay for each day it failed to provide them with compliant rest period(s);

    d.   Whether Henry Mayo failed to provide its Straight Time Employees with accurate, itemized wage statements;

    e.   Whether Henry Mayo failed to timely pay all earned wages to the Straight Time Employees upon termination of employment;

      f.    Whether Henry Mayo's decision not to pay the Straight Time Employees overtime wages for all hours worked, including overtime hours, was made in good faith;

      g.    Whether Henry Mayo's decision not to pay the Straight Time Employees premium pay for each day it denied them a compliant meal and/or rest period was made in good faith;

      h.    Whether Henry Mayo's decision not to provide the Straight Time Employees with accurate itemized wage statements was made in good faith; and

      i.    Whether Henry Mayo's violations were willful.

134.    As part of its regular business practices, Henry Mayo intentionally, willfully, and repeatedly violated the FLSA and California law concerning McNabb and the other Straight Time Employees.

135.    Henry Mayo's illegal policies deprived McNabb and the other Straight Time Employees of the earned overtime wages, meal and rest periods, premium pay for missed breaks, timely pay upon termination of employment, and accurate wage statements they are owed under California law.

136.    There are many similarly situated FLSA Collective Members who have been denied overtime wages of at least 1.5 times their regular rates of pay in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

137.    The FLSA Collective Members are known to Henry Mayo, are readily identifiable, and can be located through Henry Mayo's business and personnel records.

/ / /

/ / /

/ / /

## Henry Mayo's Wage-and-Hour Violations Were Willful

138.   Henry Mayo knew it was subject to the overtime provisions of the FLSA, California Labor Code, and applicable IWC Wage Orders.

139.   Henry Mayo knew the FLSA, California Labor Code, and applicable IWC Wage Order(s) required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 8 in a workday and 40 in a workweek.

140.   Henry Mayo knew each Straight Time Employee worked more than 8 hours in at least one workday and/or more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their hours worked.

141.   Henry Mayo knew the Straight Time Employees were non-exempt employees entitled to overtime wages.

142.   Henry Mayo knew the Straight Time Employees were its hourly employees.

143.   Henry Mayo knew it paid the Straight Time Employees on an hourly basis.

144.   Henry Mayo knew the California Labor Code and applicable IWC Wage Orders required it to provide nonexempt employees, including the Straight Time Employees, with a 30-minute, duty free meal period for every five hours worked no later than the end of the fifth hour of work.

145.   Henry Mayo knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including the Straight Time Employees, one hour of premium pay for each day they are denied a compliant meal period.

146.   Henry Mayo knew the Straight Time Employees did not receive compliant meal periods.

147.   Nonetheless, Henry Mayo did not pay the Straight Time Employees one hour of premium pay each day it denied them a compliant meal period.

148.   Henry Mayo's failure to provide its Straight Time Employees with compliant meal periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant meal period made in good faith.

149.   Henry Mayo knew the California Labor Code and applicable IWC Wage Orders required it to provide employees, including the Straight Time Employees, with 10-minute, duty free rest periods every 4 hours worked or major fraction thereof.

150.   Henry Mayo knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including the Straight Time Employees, one hour of premium pay for each day they are denied a compliant rest period.

151.   Henry Mayo knew the Straight Time Employees did not receive compliant rest periods.

152.   Nonetheless, Henry Mayo did not pay the Straight Time Employees one hour of premium pay each day it denied them a compliant rest period.

153.   Henry Mayo's failure to provide its Straight Time Employees with compliant rest periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant rest period made in good faith.

154.   Henry Mayo knew the California Labor Code and applicable IWC Wage Orders required it to provide the Straight Time Employees with accurate itemized wage statements.

155.   Nonetheless, Henry Mayo knew the wage statements it provided to the Straight Time Employees did not accurately reflect their actual overtime wages earned, their actual gross and net wages earned, and/or their premium pay for missed meal and rest periods.

156.   Henry Mayo's failure to provide the Straight Time Employees with accurate wage statements was neither reasonable nor was its decision not to provide

these employees with accurate wage statements made in good faith.

157.    Henry Mayo knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the California Labor Code and applicable IWC Wage Order(s).

158.    Henry Mayo knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived McNabb and the other Straight Time Employees of their earned overtime wages, rest and meal periods, premium pay for missed rest and meal periods, and accurate wage statements in violation of the California Labor Code and applicable IWC Wage Order(s).

159.    In sum, Henry Mayo's violations were willful, carried out in bad faith, and caused significant damage to McNabb and the other Straight Time Employees.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES

### UNDER THE FLSA

160.    McNabb brings her FLSA claims as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

161.    Henry Mayo violated, and is violating, the FLSA by employing non-exempt employees (McNabb and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 each workweek, including hours worked "off the clock."

162.    Henry Mayo's unlawful conduct harmed McNabb and the other FLSA Collective Members by depriving them of the overtime compensation they are owed.

163.    Accordingly, Henry Mayo owes McNabb and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

164.    Because Hanry Mayo's FLSA violations were willful, it owes these wages for at least the past 3 years.

165.    Because Henry Mayo's FLSA violations were not committed in good faith, it is also liable to McNabb and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

166.    Finally, McNabb and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME PURSUANT TO LAB. CODE § 510

167.    McNabb brings her overtime time claims under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other Straight Time Employees pursuant to Federal Rule of Civil Procedure 23.

168.    At all relevant times, Henry Mayo was subject to the Labor Code and applicable Wage Order(s) because Henry Mayo was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

169.    At all relevant times, Henry Mayo employed McNabb and the other Straight Time Employees as its covered "employees" within the meaning prescribed in the Labor Code.

170.    McNabb and the other Straight Time Employees are entitled to under the Labor Code and applicable Wage Orders.

171.    Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

172.    IWC Wage Order 17-2001(4) states that employees:

> … shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40

hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

173.    Labor Code § 1194(a) provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

174.    Labor Code § 1198 makes it unlawful for employers, like Henry Mayo, to employ employees, including McNabb and the other Straight Time Employees, under conditions that violate the IWC Wage Order(s).

175.    Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Henry Mayo did not pay McNabb and the other Straight Time Employees overtime wages for all overtime hours worked, including those worked "off the clock."

176.    Henry Mayo's unlawful conduct harmed McNabb and the other Straight Time Employees by depriving them of the overtime wages they are owed under California law.

177.    Accordingly, Henry Mayo owes McNabb and the other Straight Time Employees the unpaid balance of the full amount of overtime wages owed and interest at the highest applicable rates.

178.    Finally, Henry Mayo is also liable to McNabb and the other Straight Time Employees for their reasonable attorneys' fees and costs incurred in this action.

/ / /

/ / /

1  |  ### COUNT III

2  |  ### FAILURE TO AUTHORIZE, PERMIT, AND/OR MAKE AVAILABLE REST

3  |  ### PERIODS PURSUANT TO LAB. CODE §§ 226.7 & 512

4  179.  McNabb brings her meal and rest period claim under the California
5  Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the
6  other Straight Time Employees pursuant to Federal Rule of Civil Procedure 23.

7  180.  At all relevant times, Henry Mayo was subject to the Labor Code and
8  applicable Wage Orders.

9  181.  At all relevant times, Henry Mayo was McNabb's and each Straight
10  Time Employee's "employer" within the meaning prescribed in the Labor Code.

11  182.  At all relevant times, McNabb and each Straight Time Employee was
12  Henry Mayo's "employee" within the meaning prescribed in the Labor Code.

13  183.  At all relevant times, McNabb and the other Straight Time Employees
14  were entitled to compliant, *bona fide* meal and rest periods under the California Labor
15  Code and applicable IWC Wage Order(s).

16  184.  Sections 226.7 and 512 of the California Labor Code and applicable
17  IWC Wage Order(s) require employers, like Henry Mayo, to authorize and permit
18  meal and rest periods to their employees, including McNabb and the other Straight
19  Time Employees.

20  185.  Specifically, Sections 226.7 and 512 of the California Labor Code and
21  applicable IWC Wage Order(s) require employers, like Henry Mayo, to provide
22  employees, including McNabb and the other Straight Time Employees, one
23  uninterrupted 30-minute meal period when they work more than 5 hours per day and
24  a second uninterrupted 30-minute meal period when they work more than 10 hours
25  in day.

26  186.  Similarly, Section 226.7 of the California Labor Code and the applicable
27  Wage Orders, also requires employers, like Henry Mayo, to authorize and permit
28  employees, including McNabb and the other Straight Time Employees, to take 10

minutes of rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

187.    Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

188.    Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like Henry Mayo, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

189.    At all relevant times, Henry Mayo routinely failed to make meal periods available to McNabb and the other Straight Time Employees.

190.    Despite long days regularly lasting in excess of 12 hours, McNabb and the other Straight Time Employees are regularly unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

191.    McNabb and the other Straight Time Employees are not paid one hour of premium pay for their missed meal periods as required by California law.

192.    Similar to meal periods, at all relevant times, Henry Mayo regularly fails to make rest periods available to McNabb and the other Straight Time Employees.

193.    When available, if ever, McNabb's and the other Straight Time Employees' rest periods were often not compliant, but rather, were generally untimely and/or short.

194.    McNabb and the other Straight Time Employees do not receive premium pay for their missed rest periods as required by California law.

195.   Henry Mayo's unlawful conduct harmed McNabb and the other Straight Time Employees by depriving them of compliant meal and rest periods, as well as premium pay.

196.   Henry Mayo knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide McNabb and the other Straight Time Employees compliant meal and rest periods and required premium pay for missed meal and rest periods.

197.   Accordingly, McNabb and the other Straight Time Employees are entitled to compensation for Henry Mayo's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

### COUNT IV

### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS PURSUANT TO LAB. CODE § 226

198.   McNabb brings her wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other Straight Time Employees pursuant to Federal Rule of Civil Procedure 23.

199.   At all relevant times, Henry Mayo was subject to the Labor Code and applicable Wage Order(s) because Henry Mayo was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

200.   At all relevant times, Henry Mayo employed McNabb and the other Straight Time Employees as its covered "employees" within the meaning prescribed in the Labor Code.

201.   Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision

1
2
3
4
5
6
7
8
9
10
11

> (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

12
13

202.    The applicable Wage Order(s) establish similar wage statement requirements.

14

203.    Labor Code § 226(e) provides:

15
16
17
18
19

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

20
21
22
23

204.    As a result of its aforementioned illegal practices, Henry Mayo does not provide timely, accurate itemized wage statements to McNabb and the other Straight Time Employees, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

24
25
26
27

205.    Specifically, the wage statements Henry Mayo provides McNabb, and the other Straight Time Employees do not accurately reflect their actual gross wages earned, their actual overtime wages earned, their premium pay earned, or their actual net wages earned.

28

206.    Henry Mayo's unlawful conduct harmed McNabb and the other

Straight Time Employees by depriving them of the accurate wage statements they are entitled to under California law.

207.    Accordingly, Henry Mayo is liable to McNabb and the other Straight Time Employees for the amounts described above, plus interest.

208.    Finally, Henry Mayo is also liable to McNabb and the other Straight Time Employees for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## COUNT V

### WAITING TIME PENALTIES PURSUANT TO LAB. CODE §§ 201-203

209.    McNabb brings her waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other Straight Time Employees who have left their employment with Henry Mayo pursuant to Federal Rule of Civil Procedure 23.

210.    At all relevant times, Henry Mayo was subject to the Labor Code and applicable Wage Order(s) because Henry Mayo was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

211.    At all relevant times, Henry Mayo employed McNabb and the other Straight Time Employees as its covered "employees" within the meaning prescribed in the Labor Code.

212.    Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

213.    Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

214.    Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

215.    McNabb and some of the other Straight Time Employees have left their employment with Henry Mayo, at which time Henry Mayo owed them unpaid wages.

216.    These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, and premium pay Henry Mayo owes McNabb and the other Straight Time Employees.

217.    Henry Mayo willfully refused and continues to refuse to pay McNabb and the other Straight Time Employees all wages due and owing to them, in the form of earned wages, overtime pay, and premium pay, upon the end of their employment as a result of Henry Mayo's illegal policies.

218.    Henry Mayo's unlawful conduct harmed McNabb and the other Straight Time Employees by depriving them of the earnings and interest they are owed under California law.

219.    Accordingly, Henry Mayo is liable to McNabb and other Straight Time Employees for all penalties owing pursuant to Labor Code §§ 201-203.

220.    Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

221.    Therefore, McNabb and other Straight Time Employees are entitled to penalties pursuant to Labor Code § 203, plus interest.

/ / /

/ / /

/ / /

/ / /

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*McNabb v. Henry Mayo Newhall Memorial Hospital*

## COUNT VI

## VIOLATION OF CALIFORNIA UCL PURSUANT TO

## BUS. & PROF. CODE §§ 17200, ET SEQ.

222.    McNabb brings her UCL claim as a class action on behalf of herself and the other Straight Time Employees pursuant to Federal Rule of Civil Procedure 23.

223.    California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

224.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

225.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

226.    Beginning at an exact date unknown to McNabb, but at least during the 4 years prior to the filing of this Complaint, Henry Mayo committed acts of unfair competition as defined by the UCL, engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.  Violations of Labor Code § 204 pertaining to failure to pay all wages owed;

    b.  Violations of Labor Code § 510 and IWC Wage Order 17-2001 pertaining to overtime;

    c.  Violations of Labor Code §§ 226.7 and 512 and Wage Order 17-2001 pertaining to meal and rest periods; and

    d.  Violations of Labor Code § 226 regarding accurate, timely itemized wage statements.

227.   Henry Mayo's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq*.

228.   Henry Mayo's acts and practices described above constitute unfair, unlawful, and fraudulent business practices and unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq*.

229.   Among other things, Henry Mayo's acts and practices have taken from McNabb and the other Straight Time Employees' wages rightfully earned from them, while enabling Henry Mayo to gain an unfair competitive advantage over law-abiding employers and competitors.

230.   Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

231.   Injunctive relief is necessary and appropriate to prevent Henry Mayo from repeating the unlawful, unfair, and fraudulent business acts and practices alleged in this Complaint.

232.   Henry Mayo's unlawful conduct harmed McNabb and the other Straight Time Employees by depriving them of money and property, in the form of unpaid wages which are due and payable to them.

233.   Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

234.   McNabb and the other Straight Time Employees are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

235.   McNabb's success in this action will enforce important rights affecting

the public interest and, in that regard, McNabb sues on behalf of herself, as well as the other similarly situated Straight Time Employees.

236. Accordingly, McNabb and the other Straight Time Employees seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

237. McNabb takes it upon herself to enforce these laws and lawful claims. There is a financial burden involved in pursuing this action, and the action is seeking to vindicate a public right and it would be against the interests of justice to penalize McNabb by forcing her to pay attorneys' fees from the recovery in this action.

238. Thus, Attorneys' fees are appropriately awarded to McNabb pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## Relief Sought

WHEREFORE, McNabb, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order certifying this lawsuit as a class action pursuant to Fed. R. Civ. P. 23;

c.    An Order appointing McNabb and her counsel to represent the interests of the California Class Members;

d.    Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA and California Labor Code;

e.    A Declaratory Judgment that Henry Mayo violated the FLSA, UCL, Labor Code, California law, and public policy as alleged herein;

1    f.    An Order finding Henry Mayo liable to McNabb and the other

2          FLSA Collective Members for all unpaid overtime wages owed

3          under the FLSA, plus liquidated damages in an amount equal to

4          their unpaid wages;

5    g.    An Order finding Henry Mayo liable to McNabb and the other

6          California Class Members for their unpaid wages, overtime

7          wages, double-time wages, liquidated damages, statutory

8          damages, and any other penalties owed under the California

9          Labor Code, applicable IWC Wage Order(s), and UCL;

10   h.    An equitable accounting to identify, locate, and restore all current

11         and former employees the wages and compensatory damages

12         they are due, with interest thereon at the highest rates allowable

13         by law;

14   i.    Judgment awarding McNabb and the other Straight Time

15         Employees all unpaid wages, overtime wages, double time wages,

16         liquidated damages, statutory damages, and any other penalties

17         available under the FLSA, Labor Code and/or applicable IWC

18         Wage Order(s);

19   j.    An Order awarding attorney's fees, costs, and expenses as

20         provided by the FLSA, Labor Code, California Code of Civil

21         Procedure § 1021.5, the laws of the State of California, and/or

22         other applicable law;

23   k.    Pre- and post-judgment interest at the highest applicable rates;

24         and

25   l.    Such other and further relief as may be necessary and

26         appropriate.

27

28

Date: March 3, 2025                    Respectfully submitted,


                                       /s/ William M. Hogg
                                       William M. Hogg
                                       **JOSEPHSON DUNLAP LLP**

                                       *Counsel for McNabb & the Straight Time*
                                       *Employees*


## DEMAND FOR JURY TRIAL

McNabb hereby demands a jury trial on all claims and issues, as she and the other Straight Time Employees are entitled to a jury.


Date: March 3, 2025                    Respectfully submitted,


                                       /s/ William M. Hogg
                                       William M. Hogg
                                       **JOSEPHSON DUNLAP LLP**

                                       *Counsel for McNabb & the Straight Time*
                                       *Employees*